HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

COWLITZ COUNTY, et al.,

              Plaintiffs,

    v.

UNIVERSITY OF WASHINGTON, et al.,

              Defendants,

    and

UNITED STATES OF AMERICA,

              Intervenor.

CASE NO. 3:19-cv-06250-RBL

ORDER ON MOTION TO REMAND TO STATE COURT AND MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM/MOTION TO STRIKE

DKT. ## 15, 17

## INTRODUCTION

THIS MATTER is before the Court on Defendants University of Washington and Angelina Godoy's (collectively "UW") Motion to Remand to State Court [Dkt. # 17] and Plaintiffs Cowlitz County and Cowlitz County Youth Services Center's (collectively "Cowlitz") Motion to Dismiss for Failure to State a Claim/Motion to Strike [Dkt. # 15]. The underlying dispute in this case concerns a records request by UW seeking documents held by Cowlitz. The documents contain information about juveniles being held at an immigration detention center

that Cowlitz operates pursuant to a contract with U.S. Immigration and Customs Enforcement (ICE).

After Cowlitz informed ICE of UW's request, ICE notified Cowlitz that release of the records was barred by 8 C.F.R. § 236.6. Cowlitz then filed this declaratory judgment action in state court, after which the United States intervened on behalf of ICE. The U.S. removed the case to federal court under 28 U.S.C. § 1442(a)(1), a broad statute that gives the federal government and its officers substantial leeway to obtain a federal forum. UW asserts that removal was nonetheless improper because the state court designated the U.S. as a "party-plaintiff," and Cowlitz similarly argues that the U.S. cannot counterclaim against Cowlitz because they are both plaintiffs. For the following reasons, the Court resolves this tangle of procedural arguments by DENYING both Motions and designating the U.S. a defendant.

## BACKGROUND

**1.      UW's Records Requests**

On June 5, 2018, Angelina Godoy of the UW Center for Human Rights submitted a records request to Cowlitz. State Court Records, Dkt. # 13-1, at 20. The request sought to ascertain the amount and duration of detainments between 2013 and 2018 at the Cowlitz County Juvenile Facility, which Godoy identified as "one of 3 facilities in the nation approved to house unaccompanied minors for ICE/ORR for a period exceeding 72 hours." *Id*. Cowlitz responded to Godoy's request, informing her that it was governed by Cowlitz County Superior Court General Rule 31.1 (GR 31.1) and would take about 30 days to complete. *Id*. at 23-25. Cowlitz also reached out to ICE for its input on the request, to which ICE replied that everything "look[ed] good." *Id*. at 28, 31. Cowlitz, via the Superior Court, fulfilled Godoy's request on July 9. *Id*. at

1   33-34. Godoy then submitted another request for the admittance date of each juvenile, which was

2   also fulfilled. *Id*. at 37, 39-40.

3       On July 18, Godoy submitted a third records request, this time seeking a copy of the

4   underlying agreement between Cowlitz and ICE, as well as the "complete jail file (redacted to

5   conceal personally-identifying information) for all minors housed in Cowlitz County facilities

6   for ICE from 1/1/2015-7/15/2018". Dkt. # 13-1 at 43. Godoy later clarified that she was

7   "interested in reviewing a copy of each arrestee's facesheet, depicting charges, arrest reports,

8   holds for other agencies, book-in and book-out dates, any ICE detainers, and transfer

9   information," but not medical information. *Id*. at 55.

10      Cowlitz again reached out to ICE about Godoy's request, and ICE responded on

11  September 18. ICE did not object to the release of its agreement with Cowlitz, but the agency

12  informed Cowlitz that the jail file documents could not be disclosed to UW. Dkt. # 13-1 at 62.

13  ICE explained that release was barred by 8 C.F.R. § 236.6, which prohibits state and local

14  governments from "disclos[ing] or otherwise permit[ting] to be made public the name of, or

15  other information relating to" detainees held on behalf of ICE. On October 10, Cowlitz informed

16  ICE that the records were scheduled for release on October 17. *Id*. at 64. The next day, a

17  representative of the U.S. Department of Justice contacted Cowlitz requesting an extension and

18  reaffirming ICE's position regarding 8 C.F.R. § 236.6. *Id*. Cowlitz agreed to the extension and

19  did not release the jail file documents. *Id*. at 68.

20      On December 5, Cowlitz reached out to the representative of the Washington Office of

21  Attorney General assigned to UW. Dkt. # 13-1 at 72-73. Cowlitz explained the situation and

22  requested assistance navigating the clash between state law and federal regulations, noting that

23  some courts had held that 8 C.F.R. § 236.6 bars any disclosure but that a recent Eastern District

24

of California case held that it did not. *Id.* (citing *United States v. California*, 314 F. Supp. 3d 1077, 1093 (E.D. Cal. 2018)). Cowlitz also mentioned that ICE was "poised" to challenge its effort to release the documents with redactions. *Id.* at 72. On a subsequent call, Godoy and an AG representative informed Cowlitz that UW would not file a court action to compel release but that it would like Cowlitz to fulfill the request with any necessary redactions. *Id.* at 148. Unsure of its obligations, Cowlitz initiated the present action.

**2.      State Court Proceedings**

Cowlitz filed its action for declaratory relief against UW in Cowlitz County Superior Court on February 1, 2019. Dkt. # 1-1. Specifically, among several other requests related to GR 31.1 and the PRA, Cowlitz asks that the Court declare that it may respond to UW's request "subject to such restrictions and protections on further release of such records to the general public as may be deemed necessary and reasonable by the Court for purposes of compliance with 8 C.F.R. § 236.6." *Id.* at 7-8; *see also* Cowlitz Motion for Summary Judgment, Dkt. # 13-1, at 220 (requesting a declaration that 8 C.F.R. § 236.6 "only prohibits [Cowlitz] from disclosing such records to the general public and does not prohibit disclosure of records under Washington state law to UW for public purposes").

In its Answer, UW likewise seeks a declaration (1) that the juvenile detention documents are subject to the same disclosure obligations under state law regardless of whether such records are managed under the local court system, and (2) that 8 C.F.R. § 236.6 does not bar release of the Cowlitz records. Dkt. # 31-1 at 167. UW also requests "[t]hat the Court order release of the redacted records to the University under RCW 13.50.010(8) and/or 13.50.280, for purposes of legitimate research for educational and/or public purposes." *Id.*

On May 30, 2019, the U.S. moved to intervene in the case as a party defendant. Dkt. # 13-1 at 175. To justify its entrance into the case, the U.S. pointed out that it was opposed to both Cowlitz and UW because neither aimed to protect the documents from disclosure. *Id*. at 176. UW did not object to the U.S. intervening but argued that it should be as a plaintiff because the U.S.'s interests were directly opposed to those of UW, the preexisting defendant. *Id*. at 200. Further, UW contended that Washington law requires a party seeking to prevent disclosure of records to initiate an action—i.e., proceed as a plaintiff. *Id*. For its part, Cowlitz suggested that the U.S. be allowed into the case "either as an intervenor or as a defendant." *Id*. at 301. The Superior Court granted the U.S.'s motion to intervene but joined the U.S. as a plaintiff. *Id*. at 334-35.

On December 30, 2019, the U.S. removed this case to federal court under 28 U.S.C. § 1442(a)(1). Dkt. # 1. The U.S. then filed an "Answer and Counterclaim" against Cowlitz asserting that, under 8 C.F.R. § 236.6, the disputed documents are federal property that cannot be made public by any state or local government. Dkt. # 8 at 7-8. The U.S. claims that it has property rights over the documents and that their release is forbidden by § 236.6, meaning that the PRA does not require disclosure or that the PRA is preempted by § 236.6. *Id*. Accordingly, the U.S. seeks declaratory and injunctive relief preventing Cowlitz from releasing the documents. *Id*. at 8-9.

## DISCUSSION

**1.     Motion to Remand**

28 U.S.C. § 1442(a)(1), or the Federal Officer Removal Statute, dates back to 1815. *Mesa v. California*, 489 U.S. 121, 126 (1989). The Statute was enacted to prevent states from "arrest[ing] . . . the operations of the federal government" by prosecuting federal officers with

1    impunity under state law. *Id.* (citing *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)). Over the

2    decades, however, § 1442(a)(1)'s scope has expanded significantly. Today, it reads as follows:

3       (a)  A civil action or criminal prosecution that is commenced in a State court and
        that is against or directed to any of the following may be removed by them to the
4       district court of the United States for the district and division embracing the place
        wherein it is pending:

5
6          (1)   The United States or any agency thereof or any officer (or any person
           acting under that officer) of the United States or of any agency thereof, in
7          an official or individual capacity, for or relating to any act under color of
           such office or on account of any right, title or authority claimed under any
           Act of Congress for the apprehension or punishment of criminals or the
8          collection of the revenue.

9    28 U.S.C. § 1442(a)(1).

10        The current Statute is the result of many amendments, one of which occurred in 1996

11   when Congress added the portion allowing "[t]he United States or any agency thereof" to

12   remove. *City of Cookeville, Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380,

13   390 (6th Cir. 2007) (citing S.Rep. No. 104–366, at 6–7, 30–31 (1996), reprinted in 1996

14   U.S.C.C.A.N. 4202, 4202, 4210–11). This was a direct reaction to *International Primate*

15   *Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72, 79-82 (1991),

16   which held that the pre-1996 version of the Statute only supported removal by federal officers.

17   *Id.* at 388-89. In 2011, Congress further amended the Statute by "expand[ing] the language to

18   allow removal of a 'civil action . . . that is against *or directed to*' a federal officer 'for *or related*

19   *to* any act under color of [federal] office,' 28 U.S.C. § 1442(a) (emphases added)—removing

20   altogether the requirement that the officer [or agency] be 'sued.'" *Goncalves By & Through*

21   *Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1250 (9th Cir. 2017).

22        Consistent with this slow broadening of the Statute, the Ninth Circuit has

23   observed that "when federal officers and their agents are seeking a federal forum, [courts]

24

1   are to interpret section 1442 broadly in favor of removal." *Durham v. Lockheed Martin*

2   *Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). This preference for removal "should not be

3   frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* (quoting *Willingham*

4   *v. Morgan*, 395 U.S. 402, 407 (1969)). As such, "the form of the action is not

5   controlling" when determining whether a case can be removed. *Nationwide Inv'rs v.*

6   *Miller*, 793 F.2d 1044, 1047 (9th Cir. 1986).

7         Nonetheless, "[a]n entity seeking removal under § 1442(a)(1) bears the burden of

8   showing "that (a) it is a 'person' within the meaning of the statute; (b) there is a causal

9   nexus between its actions . . . and [the] plaintiff's claims; and (c) it can assert a 'colorable

10  federal defense.'" *Goncalves*, 865 F.3d at 1244. The bar for the causal nexus requirement

11  is "quite low" and requires only that the entity's acts "constitute the basis, though

12  mistaken or false, of the state prosecution." *Id.* at 1244-45 (quoting, respectively,

13  *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008) and *Maryland v. Soper*,

14  270 U.S. 9, 33 (1926)). As for the federal defense requirement, the removing party must

15  only state a plausible defense and "need not win [the] case before it can be removed."

16  *Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see also Goncalves*, 865 F.3d at 1249

17  ("[W]e need find but one colorable defense to satisfy the prong.").

18        UW argues that the Federal Officer Removal Statute cannot apply here because the U.S.

19  has been properly designated as a plaintiff in this case. Even if § 1442(a)(1) does apply, UW

20  contends that the U.S. cannot remove because Cowlitz's claims are unrelated to any action by

21  ICE and the U.S. does not raise any federal defense because Cowlitz has asserted no claims

22  against it. The U.S. responds that, despite lacking formal designation as a defendant,

23  § 1442(a)(1) still applies because the U.S.'s interest in enforcing federal law and barring release

24

of the jail file documents is adverse to Cowlitz. Further, the U.S. contends that it satisfies the

requirements for removal because its objection to Cowlitz releasing the documents precipitated

this lawsuit and the U.S. now asserts federal law defenses, such as preemption.

The odd configuration of this action strains the limits of the Federal Officer

Removal Statute and makes easy guidance from case law hard to come by. Nonetheless,

at its heart, this case challenges ICE's ability to control access to records on federal

detainees. The Court therefore concludes that allowing removal is consistent with both

the broad language and underlying purpose of § 1442(a)(1).

First, Cowlitz's action is a "civil case" that is "directed to" the U.S. 28 U.S.C.

§ 1442(a).[1] Despite the nominal division between plaintiffs and defendants, the true

dispute here is between UW/Cowlitz, which believe the records should be released with

redactions and conditions, and the U.S., which believes they cannot be released at all.

*Compare* Cowlitz Complaint, Dkt. # 1-1, at 7-8 (seeking declaration that Cowlitz can

release records to UW subject to restrictions on further release to public) *and* UW

Answer, Dkt. # 31-1, at 167 (seeking court order requiring Cowlitz to release redacted

records to UW) *with* U.S. Answer, Dkt. # 8, at 8 (seeking permanent injunction against

---

[1] Under 28 U.S.C. § 1442(d)(1), "[t]he terms 'civil action' and 'criminal prosecution' include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court." The parties do not dispute that Cowlitz's lawsuit satisfies this definition.

The Court notes that UW's counterclaims for declaratory and injunctive relief also seek a "judicial order" and are therefore removable in their own right. UW Answer, Dkt. # 31-1, at 167. Even if this Court found the state court's categorization of "plaintiffs" and "defendants" determinative, the U.S. would clearly be in a defensive posture with respect to UW's counterclaims and could remove that "ancillary proceeding" on its own. However, this would make little sense given that Cowlitz and UW both seek a judicial order to allowing release of the jail file documents, and Cowlitz is the party that actually has the documents.

release). At best, Cowlitz could be considered a neutral party looking for judicial

guidance, but its preferred interpretation of federal law nonetheless clashes with the

U.S.'s. *See* Cowlitz Response to U.S. Motion to Intervene, Dkt. # 13-1, at 310 (describing

this as a case "to resolve supremacy issues as to whether [Cowlitz] should abide by

alternate assertions" by UW and the U.S.). The case is therefore "directed to" the U.S.

insofar as both Cowlitz and UW request relief that *only* the U.S. actually opposes.

In other words, the U.S. is the real party in interest. "The general rule is that a suit

is against the sovereign if the judgment sought would expend itself on the public treasury

or domain, or interfere with the public administration." *In re Lusk*, No. SACV16093

0AGJCGX, 2016 WL 4107671, at *3 (C.D. Cal. July 30, 2016) (quoting *Dugan v. Rank*,

372 U.S. 609, 620 (1963)); *see also Miami Herald Media Co. v. Fla. Dep't of

Transportation*, 345 F. Supp. 3d 1349, 1363 (N.D. Fla. 2018). Whether or not the Court

determines that the disputed records are federal property, there is no question that they

relate to federal detainees held on behalf of the federal government. The claims of both

Cowlitz and UW thus stand to interfere with the U.S.'s interest in controlling access to

such documents. This interest is certainly not hypothetical and entitles the U.S. to a

federal forum for its protection.

Second, there is a causal nexus linking ICE's objection to the release of the

documents and Cowlitz's claim for relief. While it is true that Cowlitz's claim does not

directly challenge an action by ICE, the record makes clear that this lawsuit was triggered

by ICE's communications forbidding disclosure, which were delivered under its authority

as a federal agency. *See Golden v. New Jersey Inst. of Tech.*, 934 F.3d 302, 310 (3d Cir.

2019) (holding that FBI's directive to withhold documents constituted "acting under" the

1  United States). Indeed, when it questioned ICE's directive, Cowlitz reached out to UW

2  for input and only filed suit after UW declined to do so first. *See* Dkt. # 13-1 at 148.

3  Congress's 2011 amendment of the Federal Officer Removal Statute also softened the

4  causal requirement by inserting that an action need only "relat[e] to" an act by the

5  removing entity. § 1442(a)(1). Cowlitz's claim may not be based solely on ICE's actions,

6  but it is certainly related.

7        Third, the U.S.'s federal law counterclaim supports removal. The Court has

8  already determined that this case is "directed to" the U.S., despite its nominal status as a

9  plaintiff, because Cowlitz's (and UW's) requested relief threatens ICE's interest in

10  controlling records on federal detainees. It follows that a federal claim aimed at

11  protecting that interest, just as much as a federal defense aimed at protecting an officer,

12  supports removal. Numerous courts have allowed removal under § 1442(a)(1) based on a

13  federal preemption argument. *See, e.g., Goncalves*, 865 F.3d at 1249; *City of Cookeville,*

14  *Tenn. v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 391 (6th Cir. 2007).

15  Some have even done so where the government asserted that certain documents were

16  federal property or could not be released under federal law. *See Miami Herald*, 345 F.

17  Supp. 3d at 1362-63; *Golden*, 934 F.3d at 311. The same outcome is appropriate here.

18        This is also consistent with the Supreme Court's rationale for the federal defense

19  requirement, which was cemented in *Mesa v. California* when the Federal Officer

20  Removal Statute still applied only to officers. 489 U.S. 121 (1989). The Court explained

21  that cases applying the Statute had consistently focused on the presence of a defense

22  whereby the federal government could protect its officers from state laws. *Id*. at 126-133.

23  The Court also noted that a federal defense is necessary for officers to fall within district

24

1    courts' Article III jurisdiction. *Id*. at 136. Since § 1442(a)(1) was amended in 1996, some

2    courts have doubted that the federal defense requirement even applies to the U.S., which

3    always enjoys Article III jurisdiction as a party. *See City of Cookeville*, 484 F.3d at 389-

4    91 (explaining reasoning and collecting cases). The Ninth Circuit has not weighed in. But

5    in any case, the U.S.'s claim satisfies *Mesa*'s rationales for the federal defense

6    requirement because it seeks to protect ICE's interests from the effects of state law.

7            The U.S.'s counterclaim is also "colorable." As Cowlitz acknowledged in its

8    correspondence with ICE and UW, courts have differed on whether and to what extent

9    8 C.F.R. § 236.6 bars disclosure of locally-held records on ICE detainees. *Compare*

10   *United States v. California*, 314 F. Supp. 3d 1077, 1093 (E.D. Cal. 2018) (holding

11   § 236.6 allows disclosure to other state entities and thus did not preempt state law) *with*

12   *Voces De La Frontera, Inc. v. Clarke*, 373 Wis. 2d 348, 891 N.W.2d 803 (2017) (holding

13   that § 236.6 encompasses records on detainees in state facilities). It is certainly plausible

14   that the U.S.'s claim could succeed.

15           UW argues that the U.S.'s preemption argument is not colorable because the PRA

16   has an exemption for "other statutes" that forbid disclosure, making preemption

17   irrelevant. *See Ameriquest Mortg. Co. v. Washington State Office of Atty. Gen.*, 170

18   Wash. 2d 418, 440 (2010) (citing RCW 42.56.070(1)). But even if preemption analysis

19   does not apply, the U.S. also makes the more straightforward argument that § 236.6 bars

20   disclosure to UW. This, too, is a plausible claim based in federal law. *See Clarke*, 373

21   Wis. 2d 373 (detainee records were exempt from disclosure under Wisconsin law). UW

22   suggests that the PRA's "other statutes" exemption somehow turns the application of

23   § 236.6 into a question of state law. The Court disagrees. The fact that the PRA can be

24

1   "supplement[ed]" by federal statutes does not transform federal law into state law. *See*

2   *Ameriquest Mortg. Co. v. Washington State Office of Atty. Gen.*, 170 Wash. 2d 418, 440

3   (2010). The Court still must interpret and apply an ICE regulation that may bar a release

4   of documents that would otherwise be allowed under state law.

5        From a policy perspective, this is the type of case that ought to be removable

6   under the broad Federal Officer Removal Statute. The parties concede and the record

7   demonstrates that the central dispute is whether a *federal* regulation bars disclosure of

8   records regarding *federal* immigration detainees. Almost all the alternate configurations

9   of the case would provide a clear avenue to federal court. Had the U.S. sued first, a

10  federal forum would have been available. Had UW sued first to compel Cowlitz to

11  release the documents, the U.S.'s interests would have been undeniably aligned with the

12  "defendant" and adverse to the "plaintiff." Had the U.S. filed a statement of interest

13  under 28 U.S.C. § 517 and declined to waive sovereign immunity, it could have sought

14  dismissal as an indispensable party. *See Miami Herald*, 345 F. Supp. 3d at 1360, 1370-71.

15  In all these scenarios, the underlying dispute would be the same; the only differences are

16  procedural.

17       It would create perverse incentives to deny removal on such a technical basis.

18  Indeed, doing so could encourage the U.S. to file suit in federal court separately, creating

19  parallel proceedings and the potential for conflict. Alternately, it could encourage forum

20  shopping by parties seeking to orchestrate a state forum. But access to federal court

21  should not be "dependent on the manner in which" a party chooses to assert their claims.

22  *Goncalves*, 865 F.3d at 1251. Rather, it should turn on the alignment of interests in the

23  underlying dispute. Here, those interests support removal under § 1442(a)(1).

24

1    **2.      Motion to Dismiss and Strike**

2         Separate from UW's motion, Cowlitz moves to dismiss the U.S.'s counterclaim

3    and strike its Answer. Dkt. # 15. Basically, Cowlitz is upset that the U.S., which was

4    designated a party-plaintiff by the state court, has counterclaimed against a fellow

5    plaintiff—i.e., Cowlitz. After much hemming and hawing, Cowlitz requests that the

6    Court strike the U.S.'s Answer and Counterclaim, direct the U.S. to move for party

7    realignment, and only *then* re-assert its claim.

8         This Court is not in the habit of delaying a case for procedural reasons when the

9    real dispute is ready and waiting to be addressed. Holding things up to re-litigate party

10   alignment is especially pointless here because all the parties have asserted claims of their

11   own and no one is defending themselves from liability, making the titles of "plaintiff"

12   and "defendant" fairly meaningless. "One of the tools within the Court's inherent power

13   is to realign the parties when it properly reflects the dispute before it." *FCE Benefits*

14   *Administrators, Inc. v. Training, Rehab. & Dev. Inst., Inc.*, No. 15-CV-01160-JST, 2016

15   WL 4426897, at \*3 (N.D. Cal. Aug. 22, 2016); *see also Dolch v. United California Bank*,

16   702 F.2d 178, 181 (9th Cir. 1983) ("The courts, not the parties, are responsible for

17   aligning the parties according to their interests in the litigation.").

18        Here, the Court chooses to exercise this power by designating the U.S. as a

19   defendant. Although this does not create perfect party alignment, perfection may not be

20   possible in this case where the U.S.'s interests are opposed to UW but both parties seek

21   court orders compelling action by Cowlitz, whose interests are most aligned with UW. [2]

22

23   [2] When deciding party alignment, courts often consider the following factors: "(1) 'the first
     party to sue on the issue'; (2) the 'natural plaintiff' in the case, as defined by who raises 'the
24   affirmative claim' and who bears 'the burden of proof'; (3) whether realignment 'may aid in the

1   Making the U.S. a defendant will give it a proper adversarial stance against Cowlitz, the

2   party that holds the records and wants to release them. The U.S. can then proceed with its

3   Motion for Summary Judgment, which both Cowlitz and UW will have a chance to

4   oppose.[3]

5         UW argued to the state court that the U.S. should be a plaintiff because it wants to

6   enjoin production of the jail file records, giving it the burden of proof under GR 31.1 and

7   the PRA. *See* UW Objection to U.S. Motion to Intervene, Dkt. # 13-1, at 202-03 (citing

8   GR31.1(f)(1) and RCW 42.56.540). But burdens do not always align with party

9   designation. A party seeking to compel release of documents under the PRA—as

10  Defendant UW does here—is typically a plaintiff, yet the state agency still bears the

11  burden of proving an exemption applies. *See Freedom Found. v. Gregoire*, 178 Wash. 2d

12  686, 692, 695 (2013) (plaintiff sued to compel release). The fact that the U.S. is asserting

13  a counterclaim does not mean the burden of proof will change. In any case, making the

14  U.S. a plaintiff because it bears the burden of proof makes little sense here because it puts

15  the U.S. on the same side as the party it wants to enjoin, opening the door to the current

16  Motion to Dismiss. Yet no one denies that the U.S. should be able to assert its claim.

17

18

---

19  logical presentation of the evidence at trial'; and (4) whether realignment 'mitigates the effects of

20  . . . evident forum-shopping.'" *FCE Benefits Administrators*, 2016 WL 4426897, at *2 (quoting *Plumtree Software, Inc. v. Datamize, LLC*, No. C 02-5693 VRW, 2003 WL 25841157, at *2

21  (N.D. Cal. Oct. 6, 2003)). The unusual relationships of the parties in this case makes these factors less applicable than usual. Regardless, the Court concludes that making the U.S. a

22  defendant is more consistent with these factors than leaving it as a plaintiff.

    [3] The Court is mindful of the fact that Cowlitz and UW both believe the documents should be

23  released and are thus aligned in opposition to the U.S., suggesting that Cowlitz and UW should be on the same side. But to avoid further tampering, the Court will leave UW as a defendant and

24  allow it to file its own brief opposing UW's Motion for Summary Judgment.

1 Again, titles do not mean much in this case so long as the central legal issue can be

2 resolved and everyone gets to weigh in. That is achieved by making the U.S. a defendant.

3 **CONCLUSION**

4 For these reasons, UW's Motion to Remand [Dkt. # 17] is DENIED and

5 Cowlitz's Motion to Dismiss/Strike [Dkt. # 15] is also DENIED. The U.S. is designated a

6 defendant going forward and is granted leave to amend its pleadings accordingly.

7 Consistent with the Court's March 4th Order [Dkt. # 28], the parties shall submit a

8 proposed revised briefing schedule within 21 days. The schedule may provide time to

9 address other procedural issues, but the Court urges the parties to move expeditiously

10 toward responding to the U.S.'s Motion for Summary Judgment [Dkt. # 21] on the merits.

11 IT IS SO ORDERED.

12

13 Dated this 16th day of April, 2020.

14

15 _____

16 Ronald B. Leighton
United States District Judge

17

18

19

20

21

22

23

24

ORDER - 15